The People of the State of New York, Respondent,
against
Carlos Velasco Lopez, Appellant. 




Legal Aid Society of Westchester County (David B. Weisfuse of counsel), for appellant.
Westchester County District Attorney (Lisa M. Denig and William C. Milaccio of counsel), for respondent.

Appeal, by permission, from an order of the Justice Court of the Village of Croton-On-Hudson, Westchester County (Sam R. Watkins, J.), entered July 11, 2018. The order denied, without a hearing, defendant's motion, pursuant to CPL 440.10, to vacate a judgment of that court rendered October 5, 2016 convicting him, upon his plea of guilty, of driving while ability impaired.




ORDERED that the order is affirmed.
Defendant was charged in separate accusatory instruments with speeding (Vehicle and Traffic Law § 1180 [b]), driving while intoxicated (per se) (Vehicle and Traffic Law § 1192 [2]), and driving while intoxicated (common law) (Vehicle and Traffic Law § 1192 [3]). On October 5, 2016, he pleaded guilty to driving while ability impaired (DWAI) (Vehicle and Traffic Law § 1192 [1]) and speeding, both traffic infractions, in satisfaction of all of the charges, and was sentenced, as agreed upon, to a conditional discharge and, insofar as it relates to the DWAI conviction, the payment of a fine in the amount of $400. Prior to the entry of the pleas, defendant, his attorney, and the prosecutor executed a conviction waiver of rights form, which, among other things, specifically asked whether defendant understood that, if he was not a citizen of the United States, the guilty pleas may result in his deportation and exclusion from the United [*2]States. Defendant acknowledged in open court that his attorney had explained the content of the waiver of rights form to him and that he understood it. In addition, during the plea allocution, both the court and the prosecutor notified defendant that, if he was not a citizen of the United States, the guilty pleas "could"/"may" subject him to deportation, and defendant orally acknowledged that he understood. The court also asked defendant whether he had had sufficient time to discuss the guilty pleas with his attorney, whether he understood the terms of the plea agreement, and whether he was satisfied with his attorney's representation and the advice given by him, to which defendant responded in the affirmative. 
In June of 2018, defendant moved, through new counsel, pursuant to CPL 440.10 (1) (h), to vacate only the judgment convicting him of DWAI, on the ground that he had been denied the effective assistance of counsel when, prior to entering into his guilty plea, his prior counsel had failed to advise him of the immigration consequences of pleading guilty to this charge. More specifically, defendant contended that his prior counsel had failed to interview him about his immigration status and had failed to advise him that pleading guilty to this charge would render him no longer eligible for the Deferred Action for Childhood Arrivals (DACA) program, and, thereby, deportable, since the offense is considered a "significant misdemeanor" under that program. In support of the motion, defendant annexed an affidavit in which he stated that he had applied, and was approved, for DACA relief in 2013 and again in 2015.[FN1]
He further stated [*3]therein that, although his former attorney had spoken with him in court, that attorney did not interview, speak with, or question him about his immigration status, where he was born, whether he was a citizen of the United States, or whether he was a recipient of DACA relief. Moreover, according to defendant, prior to defendant's pleading guilty to DWAI, his attorney had "never advised him that he would no longer be eligible for DACA because of this conviction nor did he advise him that such a conviction could result in revocation of DACA." Additionally, he claimed that, although his attorney had shown him the waiver of rights form and had explained certain portions of it to him, his attorney had failed to read or explain to him the portion of the form which informed him that his conviction might result in his deportation and exclusion from the United States. In 2018, subsequent to a new arrest on an unrelated matter, defendant was detained and removal proceedings were initiated against him in immigration court. Finally, defendant stated in his affidavit that he would not have pleaded guilty to DWAI had he known that it would render him ineligible for DACA relief; rather, he would have chosen to go to trial or sought a different plea. Alternatively, defendant requested that the court conduct an evidentiary hearing on the motion pursuant to CPL 440.30 (5). 

In opposition to the motion, the People contended that the exhibits annexed to defendant's motion defeated his own claim of ineffective assistance of counsel. For example, the notice to appear in removal proceedings, dated February 2, 2018, informed defendant that he was "subject to removal from the United States, pursuant to 212 (a) (6) (A) (i) of the Immigration and Nationality Act, as amended, in that [he is] an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," not because he was convicted of DWAI. In any event, the notice of action, dated July 12, 2013, notifying defendant of his acceptance into the DACA program, specifically stated that such acceptance "does not confer or alter [his] immigration status," and informed him that, if it were revealed that he engaged in subsequent criminal activity, that would be used to determine whether termination of deferred action and/or removal proceedings would be appropriate.

In an order entered July 11, 2018, the Justice Court, without conducting a hearing, denied defendant's motion. The court stated that the conviction waiver of rights form specifically notified him that his guilty plea "may" result in his deportation and exclusion from the United States, and defendant acknowledged that he had read the form and understood that there could be such consequences. Thus, the court found that "defendant was not operating in a vacuum with no thought given to immigration consequences" and that there was no information which could be offered at a hearing that could alter its conclusion. By decision and order on application dated October 24, 2018, a justice of this court granted defendant leave to appeal from the July 11, 2018 [*4]order (see CPL 450.15 [1]). 

On appeal, defendant contends that the Justice Court erred in summarily denying his motion, since he had demonstrated that his attorney's performance at the plea proceeding was constitutionally deficient and that he was prejudiced thereby. He asserts that he had demonstrated that, prior to pleading guilty, his plea counsel had failed to interview him about his immigration status, which would have revealed that he had been a recipient of DACA relief and his counsel had failed to advise him that a guilty plea to driving while ability impaired, which is considered a "significant misdemeanor" under the DACA program, would terminate his DACA relief and make him no longer eligible for the program, thereby, rendering him "per se" deportable. 

A defendant has the right to the effective assistance of counsel before deciding whether to plead guilty (see US Const Amend VI; NY Const, art I, § 6; Padilla v Kentucky, 559 US 356, 364 [2010]; People v Hungria, 161 AD3d 1007 [2018]). Under the federal standard for ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial (see Strickland v Washington, 466 US 668, 687 [1984]). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" (Strickland, 466 US at 697). Under the state standard, the constitutional requirements for the effective assistance of counsel are met when the defense attorney provides meaningful representation (see People v Benevento, 91 NY2d 708, 712 [1998]; People v Baldi, 54 NY2d 137 [1981]). In making that assessment, a court must view counsel's performance in its totality, and, while the state standard does not require a defendant to "fully satisfy the prejudice test of Strickland," a defendant's showing of prejudice is regarded as a "significant but not indispensable element" in assessing meaningful representation (People v Caban, 5 NY3d 143, 155-156 [2005] [internal quotation marks omitted]; see also People v Nicholson, 26 NY3d 813, 831 [2016]).

We need not pass on whether there was a deficiency in counsel's performance here, or what defense counsel's duty may have been in advising defendant about the consequences of pleading guilty with respect to DACA relief (see People v Moreno, 58 Misc 3d 160[A], 2018 NY Slip Op 50289[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018], lv denied 31 NY3d 1085 [2018]; see generally State v Villegas, 380 Wis 2d 246, 908 NW2d 198 [Ct of App 2018] [holding that defense counsel did not perform deficiently by failing to acquaint himself with and give advice to the defendant regarding the federal government's DACA policy, the court stated that counsel "need not read the tea leaves and attempt to predict what federal immigration authorities will do. Nor is counsel under any obligation to familiarize himself or herself with what the executive branch's immigration policies might be now or in the future"]; Sanchez v State, 890 NW2d 716 [Minn 2017] [finding that, even though the defendant lost his DACA eligibility as a result of his guilty plea, defense counsel had satisfied his obligation under the Sixth Amendment when counsel advised the defendant that deportation was a possible consequence of the plea]; Sanchez v State, 29 NE3d 181 [Ind Ct of App 2015] [rejecting ineffective assistance of counsel claim where counsel told the defendant, who had received DACA status prior to his arrest, that he could be deported as a result of his conviction because [*5]the removal consequences were not clear]; cf. State v Perez-Basurto, 377 Wis 2d 730, 902 NW2d 810 [Ct of App 2017]), since, under the particular circumstances herein, the Justice Court properly denied defendant's motion without an evidentiary hearing. 

Here, defendant failed to establish, sufficiently to warrant an evidentiary hearing, that his attorney's alleged deficient performance had the requisite impact on his defense under either the federal or state standard since he was subsequently made aware, prior to entering his guilty plea, by both the court and the prosecutor, as well as through the conviction waiver of rights form which he had executed, that he could be deported (see People v Rampersaud, 121 AD3d 721 [2014] [finding that the County Court had properly denied, without a hearing, the defendant's CPL 440.10 motion to vacate his judgment of conviction on the ground that he had been deprived of the effective assistance of counsel when his counsel failed to advise him of the immigration consequences of his guilty plea, as required by Padilla, since the defendant was advised by the assistant district attorney at the plea proceeding that he might be deported as a result of his plea]; see generally Ellington v United States, 2010 WL 1631497 [US Dist Ct, SD NY, 2010, No. 09 Civ 4539]; People v Rodriguez, 150 AD3d 1029 [2017]; cf. People v Roberts, 143 AD3d 843 [2016]; People v Corporan, 135 AD3d 485 [2016]). Consequently, based upon these clear admonitions, defendant cannot show prejudice resulting from the alleged deficiencies in his attorney's performance (see Lee v United States, 137 S Ct 1958, 1968 n 4 [2017]; Rodriguez, 150 AD3d 1029; Rampersaud, 121 AD3d 721; see generally Moreno, 58 Misc 3d 160[A], 2018 NY Slip Op 50289[U]). 

Accordingly, the order is affirmed.
RUDERMAN, J.P., ADAMS and TOLBERT, JJ., concur.



ENTER:

Paul Kenny

Chief Clerk

Decision Date: December 5, 2019



Footnotes

Footnote 1: DACA is an immigration policy based on federal prosecutorial discretion which provides for the deferral of removal enforcement actions against certain individuals who came to the United States as children without lawful documentation (see https://www.uscis.gov/archive/ consideration-deferred-action-childhood-arrivals-daca, accessed Aug 7, 2019; see also Matter of Application of Cesar Adrian Vargas for Admission to the Bar of the State of New York, 131 AD3d 4 [2015]). "For purposes of future inadmissibility based upon unlawful presence, an individual whose case has been deferred is not considered to be unlawfully present during the period in which deferred action is in effect. An individual who has received deferred action is authorized by [the Department of Homeland Security (DHS)] to be present in the United States, and is therefore considered by DHS to be lawfully present during the period deferred action is in effect. However, deferred action does not confer lawful status upon an individual, nor does it excuse any previous or subsequent periods of unlawful presence" (U.S. Citizenship and Immigration Services, Consideration of Deferred Action for Childhood Arrivals Process). For each successful recipient of DACA, deferred action is in effect for a period of two years, subject to successive two-year renewals (see https://www.uscis.gov/archive/consideration-deferred-action-childhood-arrivals-daca, accessed Aug 7, 2019).