People v Boodoosingh (2022 NY Slip Op 22114)

People v Boodoosingh

2022 NY Slip Op 22114 [75 Misc 3d 4]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 2d, 11th 
and 13th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, June 15, 2022

[*1]

The People of the State of New York, Respondent,
v
Percival Boodoosingh, Appellant.

Supreme Court, Appellate Term, Second Department, 2d, 11th and 13th Judicial Districts, March 11, 2022

APPEARANCES OF COUNSEL

Appellate Advocates (Samuel Barr of counsel) for appellant.
Eric Gonzalez, District Attorney (Leonard Joblove and Solomon Neubort of counsel), for respondent.

{**75 Misc 3d at 5} OPINION OF THE COURT

Memorandum.

Ordered that the order is affirmed.
On January 21, 2015, defendant pleaded guilty to endangering the welfare of a child (Penal Law § 260.10 [1]) in satisfaction of an accusatory instrument which charged him with the aforementioned charge and, among other things, menacing in the second degree (Penal Law § 120.14 [2]) and criminal trespass in the third degree (Penal Law § 140.10 [a]). By notice of motion dated March 26, 2019, defendant moved, pursuant to CPL 440.10 (1) (h), for an order vacating his January 21, 2015 conviction or, alternatively, for an order granting a hearing, contending that he had been denied both his federal and state constitutional right to the effective assistance of counsel when his attorney failed to advise him of the immigration consequences of his plea. Defendant's motion papers set forth that, on October 11, 2017, removal proceedings had been initiated against defendant because the Department of Homeland Security had deemed his 2015 conviction to be, under federal immigration law, both a crime of child abuse, which, alone, rendered defendant deportable (see 8 USC § 1227 [a] [2] [E] [i]), and a crime involving moral turpitude, which, together with a 2017 conviction for criminal contempt in the first degree, also rendered him deportable (see 8 USC § 1227 [a] [2] [E] [ii]). In supplemental papers, [*2]defendant raised a separate claim of{**75 Misc 3d at 6} vacatur under CPL 440.10 (1) (j), a provision which went into effect on April 12, 2019.
The People opposed the motion and a hearing was conducted on September 9, 2019, in which defendant, his plea counsel, and his counsel on the motion testified. After post-hearing papers were submitted, the Criminal Court, in an order entered on November 6, 2019, denied defendant's motion, finding that defendant had knowingly, intelligently, and voluntarily pleaded guilty with a legally sufficient understanding that the plea might result in negative immigration consequences, including deportation, based upon: the warning it had given defendant, pursuant to People v Peque (22 NY3d 168 [2013]), during the plea allocution; the advice from his plea counsel; and the fact that, at the time the plea was entered, he had already been the subject of deportation proceedings and had prevailed in those prior proceedings. On appeal, defendant contends that he proved at the hearing that he had received the ineffective assistance of counsel under both the federal and state standards (see CPL 440.10 [1] [h]) or, alternatively, that the People failed to rebut the relevant presumption, contained in CPL 440.10 (1) (j), that his conviction by plea to endangering the welfare of a child was not knowing, voluntary and intelligent, based on ongoing collateral consequences, including potential or actual immigration consequences.
A defendant has the right to the effective assistance of counsel before deciding whether to plead guilty (see US Const Amend VI; NY Const, art I, § 6; Padilla v Kentucky, 559 US 356, 364 [2010]; People v Hungria, 161 AD3d 1007 [2018]). Under the federal standard for ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial (see Strickland v Washington, 466 US 668, 687 [1984]). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" (Strickland, 466 US at 697). Under the state standard, the constitutional requirements for the effective assistance of counsel are met when the defense attorney provides meaningful representation (see People v Benevento, 91 NY2d 708, 712 [1998]; People v Baldi, 54 NY2d 137 [1981]). In making that assessment, a court must view counsel's performance{**75 Misc 3d at 7} in its totality, and, while the state standard does not require a defendant to "fully satisfy the prejudice test of Strickland," a defendant's showing of prejudice is regarded as a "significant but not indispensable element" in assessing meaningful representation (People v Caban, 5 NY3d 143, 155-156 [2005] [internal quotation marks omitted]; see also People v Nicholson, 26 NY3d 813, 831 [2016]).
Here, defendant failed to establish that his attorney's alleged failure to advise him of the immigration consequences of his plea had the requisite impact on his defense under either the federal or state standard since, prior to entering his guilty plea, he was made indisputably aware by the court that he could be deported as a result of the plea (see People v Lopez, 65 Misc 3d 156[A], 2019 NY Slip Op 51960[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2019]; People v Moreno, 58 Misc 3d 160[A], 2018 NY Slip Op 50289[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]; see also People v Rodriguez, 150 AD3d 1029 [2017]; People v Roberts, 143 AD3d 843 [2016]; People v Corporan, 135 AD3d 485 [2016]; People v Rampersaud, 121 AD3d [*3]721 [2014]; Ellington v United States, 2010 WL 1631497, 2010 US Dist LEXIS 38943 [SD NY, Apr. 20, 2010, No. 09 CIV 4539(HB)]). Consequently, based upon this clear admonition, defendant failed to show prejudice resulting from the alleged deficiencies in his attorney's advice (see Jae Lee v United States, 582 US —, — n 4, 137 S Ct 1958, 1968 n 4 [2017]; Rodriguez, 150 AD3d 1029; Rampersaud, 121 AD3d 721; Lopez, 2019 NY Slip Op 51960[U]; Moreno, 2018 NY Slip Op 50289[U]). It is for these very same reasons that we conclude that the People rebutted the presumption contained in CPL 440.10 (1) (j). Thus, we find that the Criminal Court properly denied defendant's motion.
Accordingly, the order is affirmed.

Toussaint, J. (dissenting and voting to reverse the order, grant the branch of defendant's motion seeking to vacate the judgment of conviction pursuant to CPL 440.10 [1] [j], and remit the matter to the Criminal Court for further proceedings in accordance with CPL 440.10 [4] or [9], in the following memorandum). Defendant was charged with, among other things, endangering the welfare of a child (Penal Law § 260.10 [1]) and menacing in the second degree (Penal Law § 120.14 [2]). At the plea hearing, the prosecutor indicated that the People would be willing to accept a plea to either of those charges. The court asked defendant's attorney if defendant had a preference{**75 Misc 3d at 8} as to which charge he would plead to, and counsel responded, "I did talk to him about the endangering only because of the factual allegation." The court, the prosecutor and defense counsel then all agreed that defendant would plead guilty to endangering the welfare of a child, and defendant was subsequently allocuted on that charge. There was no discussion on the record about any difference in the potential immigration consequences of a conviction of one of those charges over the other, and there is no indication that defense counsel consulted with an immigration attorney or advised defendant to do so. A conviction of endangering the welfare of a child can be treated under federal immigration law as a crime of child abuse, which, alone, renders a noncitizen "deportable" (8 USC § 1227 [a] [2] [E] [i]). On the other hand, menacing in the second degree would not be treated, prima facie, under federal immigration law as a crime which, alone, renders a noncitizen deportable.[FN*]
The plea transcript demonstrates that, when the Criminal Court informed defendant that, if he was not a United States citizen, "this plea of guilty may result in negative immigration [*4]consequences in the future including deportation," and asked defendant whether, knowing that, he still wanted to plead guilty, defendant responded, "Yes, I have a green card." The transcript from the hearing on defendant's CPL 440.10 motion indicates that he testified that this was his response because he thought he could not be deported since he is a lawful permanent resident and was pleading guilty to a misdemeanor, which were the same reasons why he had prevailed in a prior deportation proceeding that had been commenced against him. The record further shows that, after defendant had responded that he had a green card, neither the court nor counsel explained to him that, regardless of his green card and status as a lawful permanent resident, by entering a guilty plea, he was still subject to deportation. Instead, the court merely repeated its Peque warning and again asked defendant whether he still wanted to plead guilty. Defendant also testified at the hearing on his CPL 440.10 motion that plea counsel had never{**75 Misc 3d at 9} notified him of the immigration consequences of his plea; however, plea counsel testified that, on at least three occasions, he had had conversations with defendant about deportation.
In 2019, among other amendments to the Penal Law and the Criminal Procedure Law aimed at alleviating the disproportionate consequences for misdemeanor convictions under federal immigration law, a new paragraph (j) was added to CPL 440.10 (1), effective April 12, 2019. It provides that, upon a motion by the defendant, a court may vacate a judgment of conviction upon the ground that
"[t]he judgment is a conviction for a class A or unclassified misdemeanor entered prior to the effective date of this paragraph and satisfies the ground prescribed in paragraph (h) of this subdivision. There shall be a rebuttable presumption that a conviction by plea to such an offense was not knowing, voluntary and intelligent, based on ongoing collateral consequences, including potential or actual immigration consequences." (CPL 440.10 [1] [j].)
Under all of the circumstances presented, I conclude that the People failed to rebut the statutory presumption that defendant's conviction was not knowing, voluntary and intelligent, based on his ongoing potential and actual immigration consequences (see CPL 440.10 [1] [j]). As a result, the "judgment was obtained in violation of a right of . . . defendant under the [federal and state] constitution[s]" (CPL 440.10 [1] [h]; see 440.10 [1] [j]; People v Sougou, 26 NY3d 1052, 1054 [2015]; People v Harris, 61 NY2d 9, 17-18 [1983]).
I agree with the Criminal Court that CPL 440.10 (9) does not preclude defendant from obtaining alternative relief pursuant to CPL 440.10 (4) upon the granting of a motion pursuant to CPL 440.10 (1) (j). On the contrary, the relief obtainable under CPL 440.10 (4), upon vacatur of the judgment, with its provision that, in addition to dismissing the accusatory instrument or ordering a new trial, the court can "take such other action as is appropriate in the circumstances," indicates that, upon a successful CPL 440.10 (1) (j) motion, in addition to the relief obtainable under CPL 440.10 (9), other relief, such as that set forth in CPL 440.10 (4), is available, even though CPL 440.10 (4) does not specifically refer to CPL 440.10 (1) (j) or (9). Consequently, the enactment of CPL 440.10 (9) by the legislature merely provides a court with additional remedial authority{**75 Misc 3d at 10} that it did not otherwise previously possess (see William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 70.15 at 153-154 [2021 ed]). I note that, if, as the People suggest, the Criminal Court was not authorized to vacate the judgment without their consent, this would leave defendant without a remedy in the instant matter as he [*5]was already sentenced to less than one year in jail (see CPL 440.10 [9]; Penal Law § 70.15 [1], [1-a], [3]).
Accordingly, I vote to reverse the order, grant the branch of defendant's motion seeking to vacate the judgment of conviction pursuant to CPL 440.10 (1) (j), and remit the matter to the Criminal Court for further proceedings in accordance with CPL 440.10 (4) or (9).
Aliotta, P.J., and Weston, J., concur; Toussaint, J., dissents in a separate memorandum.

Footnotes

Footnote *:Both endangering the welfare of a child and menacing in the second degree can be treated under federal immigration law as a crime involving moral turpitude. Pursuant to 8 USC § 1227 (a) (2) (A) (ii), a noncitizen "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable."